IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| GERALD L. RAY, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 08-6054-CV-SJ-NKL |
| DEPARTMENT OF VETERANS AFFAIRS, | ) |
|       Defendant. | ) |

**ORDER**

Plaintiff Gerald R. Ray ("Mr. Ray") sued the United States Department of Veterans Affairs ("VA"), alleging that poor medical treatment by VA physicians injured him. Before the Court is the VA's Motion to Dismiss for Lack of Jurisdiction [Doc. # 10].[1] For the following reasons, the Court grants the motion.

**I.  Background**[2]

Mr. Ray filed his Complaint pro se. The Complaint alleges that medication prescribed to him by VA physicians caused the loss of his formerly-healthy teeth, stomach problems, and pain. He seeks relief in the form of actual and punitive damages. On his form

---

[1] The VA filed its motion to dismiss in June 2009, arguing that this Court lacked jurisdiction because Mr. Ray had not first filed an administrative tort claim. In his response brief, Mr. Ray informed the Court that he filed an administrative claim on August 5, 2009. Because the VA raised in its reply new arguments based on the recently-filed administrative claim, the Court allowed Mr. Ray to file a surreply; he did so.

[2] Mr. Ray is acting pro se in this case, having been unable to locate counsel willing to represent him, though he indicates that he has spoken to five different lawyers about his case. The Court has construed his claims – even his arguments – liberally.

Complaint, he checked the "Yes" box next to the question, "Do you claim the wrongs alleged in your complaint are continuing to occur at the present time." On the Complaint, Mr. Ray answered the question, "Have the claims which you make in this civil action been presented through any type of Administrative Procedure within any government agency?" as follows: "October 10, 2006 to Department of Veterans Affairs entitlement to compensation was denied under 38 U.S.C. 1151."

In its briefs, the VA provided evidence of the following, which Mr. Ray does not dispute. In October 2003, Mr. Ray saw his primary care physician at the Primary Care Clinic at the Department of Veterans Affairs Medical Center in Kansas City, Missouri. Dr. Kellenbach's notes indicate that Mr. Ray had a painful oral lesion, and referred him to the Oral Surgery Department for consultation; he was seen in the Oral Surgery Department in November 2003. Mr. Ray was being treated for pulmonary problems with an inhalant medication. In August 2005, Mr. Ray was seen in the Primary Care Clinic, and continued to use the inhalant; another inhalant was added to his treatment.

In October 2005, Mr. Ray was seen again in the Primary Care Clinic; he was missing a front tooth and his teeth were loose, causing him difficulty with eating and pain. He indicated that he believed that the tooth loss was secondary to his use of the second inhalant. He reported that his private dentist had told him this was the case. The notes of that visit indicate that he was working on a letter to the Department of Veterans Affairs and trying to get "service connected for hearing" to obtain payment of the dental expense. The notes state

"he is quite convinced the VA should be responsible due to using" inhalants to treat his lungs.

Attached to Mr. Ray's August 2009 administrative tort claim was a copy of a letter dated May 2006, addressed to Mr. Ray's Primary Care Clinic physician, Dr. Moore. In that letter, Mr. Ray reported that he was having problems with his teeth and gums, and of losing another tooth. Mr. Ray states that he had spoken with two dentists, at least one of which was "on the outside." Mr. Ray states that the dentists opined that the inhalants were causing his problems. Mr. Ray also says that a doctor gave him the same opinion, and suggested Mr. Ray "go above some heads and get something done." The letter says, "I know you . . . aren't going to do anything." The letter closes with the statement that, if Mr. Ray did not have a response by May 19th, he would "have to take other actions." Mr. Ray continued with treatment by different VA doctors beginning in June 2006.

Also attached to Mr. Ray's administrative tort claim was a copy of a letter dated October 4, 2006, to Senator Christopher "Kit" Bond. The letter informs Senator Bond that Mr. Ray's prescribed inhalant medications were causing teeth and gum problems. It states that Mr. Ray's primary care physician did not want to get involved in writing a letter asking the dental department to look into whether the inhalants caused the problems. In the letter, Mr. Ray states that one doctor said "she didn't want to get involved because she was about to graduate. I had a doctor on the outside who wanted to know what kind of doctors the VA had?!"

On October 10, 2006, Mr. Ray filed a claim for disability benefits with the VA under 28 U.S.C. § 1151, which provides for payment of benefits to those injured by medical treatment if the resulting disability was service-connected. Mr. Ray gave a statement on the claim form which is quite similar to his letter to Senator Bond. The claim form says that Mr. Ray had spoken to his Primary Care Clinic doctors about his problems, and that Dr. Moore had refused to write a letter on his behalf, saying "she didn't want to get involved because she was about to graduate. I had a doctor on the outside who wanted to know what kind of doctors the VA had?!"

On July 6, 2009, Mr. Ray filed a "Form 95" administrative tort claim with the Veterans Benefits Administration's Regional Office. Mr. Ray was notified that the form was deficient because it failed to specify a sum certain. Mr. Ray corrected that deficiency in his claim filed on August 5, 2009. That claim was denied on the basis that there was no evidence of negligence, evidence that the inhalants had caused Mr. Ray's dental problems, and because the claim was out of time.

Mr. Ray filed his Complaint with this Court on January 16, 2009.

## II. Discussion

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the VA argues that Mr. Ray's claims should be dismissed for lack of subject matter jurisdiction because Mr. Ray failed to file a timely administrative tort claim. On a Rule 12(b)(1) motion, courts may consider matters outside the pleadings when parties make "factual" (as opposed to "facial") challenges to subject matter jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 728 n.

4

4 (8th Cir. 1990). On factual challenges to subject matter jurisdiction, courts are free to "weigh evidence and satisfy [themselves] as to the existence of [their] power to hear the case." *Osborn*, 918 F.3d at 730 (citation omitted). On a 12(b)(1) factual challenge, considering evidence beyond the complaint does not convert a Rule 12(b)(1) motion to a Rule 56 motion for summary judgment. *Id.*

In support of its Motion to Dismiss, the government has submitted evidence beyond the pleadings. Mr. Ray does not dispute the VA's evidence concerning the jurisdictional basis for his claims. Thus, the Court considers whether the undisputed facts submitted by the VA, as well as the Plaintiff's Complaint, demonstrate jurisdiction.

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §§ 2671-2680, provides a limited waiver of sovereign immunity for tort claims against the United States based on the acts or omissions of government employees acting within the scope of their employment. The FTCA provides an exclusive remedy for Mr. Ray's apparent medical malpractice tort claims against the VA, and the United States is the only proper defendant. *See* 28 U.S.C. § 2679. 28 U.S.C. § 2675(a) requires that final disposition by a federal agency of an administrative tort claim is a prerequisite to filing an action against the United States. *McCoy v. United States*, 264 F.3d 792, 794 (8th Cir. 2001). 28 U.S.C. § 2401(b) requires that tort claims against the United States are "forever barred" unless presented to the appropriate federal agency within two years after accrual of a claim. *See id.* This requirement is a jurisdictional prerequisite to a civil action based on a tort claim. *T.L. ex. rel Ingram v. United States*, 443 F.3d 956, 961 (8th Cir. 2006).

5

In medical malpractice cases such as this, claims accrue when plaintiffs actually know of, or in the exercise of reasonable diligence should know of, the cause and existence of their injuries. *T.L.*, 443 F.3d at 962. Plaintiffs have a duty to seek advice about possible legal action when they are aware that they have been injured, not only after the full effects of the injury have manifested or after they are fully aware of the cause of that injury. *Id.* As indicated by his Complaint, Mr. Ray does not dispute that he knew about his injury by October 2006, more than two years before he filed his administrative tort claim in the summer of 2009.

There are two relevant exceptions to the statute of limitations at issue here. The burden of establishing exceptions to statutes of limitations rests with parties asserting those exceptions. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89. 96 (1990). Mr. Ray raises neither exception.

First, the "continuous treatment doctrine" holds that "a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time." *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987); *Sell v. United States Dep't of Justice*, 585 F.3d 407, 411 (8th Cir. 2009). The continuous treatment doctrine stems from patients' rights to place trust and confidence in their medical providers, excusing patients from challenging the quality of care until the confidential relationship ends. *Otto v. National Institutes of Health*, 815 F.2d 985, (4th Cir. 1987).

Here, the continuous treatment doctrine does not delay the accrual of Mr. Ray's cause of action past October 2006. Courts have indicated that continuous treatment doctrine should not be applied where there is a break in the protected relationship between patients and their medical providers, such that plaintiffs have an opportunity to challenge the propriety of their treatment. *See Sell*, 585 F.3d at 411 (finding the continuous treatment doctrine inapplicable where an inmate was transferred to a facility run by non-governmental independent contractors who continued to treat his condition); *Holland v. United States*, 302 F. Supp. 2d 484, 488 (M.D.N.C. 2004) ("Assuming *arguendo* that the facts of this case support application of the continuous treatment doctrine for a period of time . . . Plaintiff's continuous treatment at the VA was fatally interrupted . . . when Plaintiff went outside the doctor-patient relationship and sought legal advice about his potential FTCA claim from a personal injury lawyer who proceeded to obtain second opinions from two medical specialists with no affiliation with the VA."). As early as May 2006, Mr. Ray had consulted at least one non-VA dentist, as well as another dentist and doctor (who may or may not have been with the VA), who identified his dental problems and indicated they were caused by the inhalants. By October 2006, an outside doctor had questioned Mr. Ray's treatment by the VA doctors, and Mr. Ray was filing a claim for benefits and writing his senator to get remedial action. At that point, his trust and confidence in the VA had demonstrably ceased and he was already challenging the quality of his care. The purposes of the continuous treatment doctrine would not be served by delaying accrual of his claims beyond that point.

Second, the doctrine of equitable tolling will apply to FTCA claims, but may only be invoked in exceptional circumstances and does not apply to "'garden variety claims' of excusable neglect." *T.L.*, 443 F.3d at 963 (quoting *Irwin,* 498 U.S. at 96; citing *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002)). There is no basis for equitable tolling here. Again, Mr. Ray was well-aware of his injury and its cause in October 2006. He does not argue that he was in any way prevented from pursuing proper administrative tort claim remedies. *See Sell*, 585 F.3d at 410 (finding that mental illness did not prevent discovery of an injury such that the statute of limitations should be tolled). Mr. Ray is not entitled to equitable tolling past October 2006, when he was aware of and challenging his treatment and injury.

Though the parties do not address the issue, Mr. Ray's claim for benefits under 38 U.S.C. § 1151 does not equate to an administrative tort claim that would satisfy the jurisdictional prerequisite of Mr. Ray's FTCA action. Section 1151 claims for benefits do not amount to claims for tortious misconduct which must be made prior to filing FTCA claims. *Mansfield v. Peake*, 525 F.3d 1312, 1317 (Fed. Cir. 2008) (analyzing the difference between § 1151 claims for benefits and FTCA claims, and finding that filing of an FTCA Form 95 did not constitute the filing of a claim for § 1151 benefits).

Even if Mr. Ray's administrative tort claim could be deemed to relate back to January 16, 2009, the date he filed this action, that claim would still be out of time. His cause of action accrued in October 2006 at the latest. Under the two year statute of limitations, October 2008 would have been the deadline for filing his administrative tort claim. *See*

8

*generally* 28 U.S.C. § 2679(d) (providing that, where a civil action is dismissed for failing to present an administrative tort claim, a subsequent administrative tort claim may be deemed timely where such a claim would have been timely if it was filed on the same day as the civil action, among other requirements). Mr. Ray did not meet that deadline, and would not have done so even if he had filed his administrative tort claim on January 16, 2009. Under the FTCA, the Court is without jurisdiction to now consider the merits of his civil action.

## III. Conclusion

Accordingly, it is hereby ORDERED that the VA's Motion to Dismiss [Doc. # 10] is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 10, 2010
Jefferson City, Missouri

9